UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALLEN DUANE STINSON,

      Petitioner,

v.                                   CASE NO. 6:11-cv-00476-Orl-36KRS

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

      Respondents.

_____

**ORDER**

Allen Duane Stinson ("Petitioner") initiated this action for habeas corpus relief pursuant to 28 U.S.C. § 2254 (Doc. 1, filed March 25, 2011).  Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted (Doc. 8).  Thereafter, Respondents filed a timely response to the petition in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. 11).  Petitioner filed a reply and two supplemental replies to the response (Docs. 17, 20, 24).

Petitioner alleges twelve claims for relief in his habeas petition: [1]

    1.      The trial court should have granted Petitioner's motion in limine to exclude a hearsay statement made by the victim;

    2.      Comments made by the prosecutor during closing argument constituted fundamental error;

---

[1] Petitioner labeled five claims in his petition.  However, eight separate claims of ineffective assistance of counsel were raised in "Ground Four" of his petition (Doc. 1 at 14-15).  For clarity, this Court will address each claim separately.

3.   Appellate counsel was ineffective for failing to raise as an issue on appeal that the jury instruction for aggravated battery was missing an element;

4.   Trial counsel was ineffective for failing to object to the prosecution's leading questions;

5.   Trial counsel was ineffective for failing to object to the prosecution's elicitation of hearsay testimony from the victim's mother;

6.   Trial counsel was ineffective for failing to object to the testimony of the arresting officer that Petitioner made a spontaneous statement without the benefit of a *Miranda*[2] warning;

7.   Trial counsel was ineffective for failing to object to portions of the prosecutor's closing argument;

8.   Trial counsel was ineffective for failing to object to a question to Petitioner's sister regarding her knowledge of the victim's pregnancy;

9.   Trial counsel was ineffective for failing to object to the prosecutor's reference to "lamps or lighting" in the closing argument;

10.   Trial counsel was ineffective for failing to object to the prosecutor's statement that pregnant women don't have good memories;

11.   Trial counsel was ineffective for failing to object to the prosecutor's argument that the victim's refusal of an ambulance did not necessarily mean that she was not battered; and

12.   Trial counsel was ineffective for failing to obtain the victim's medical records to verify that she was pregnant and that she sought medical treatment.

(Doc. 1 at 5-16).  Upon due consideration of the petition, the response, the replies, and the

state-court record, this Court concludes that the petition must be denied.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (statements made in response to interrogation by a defendant in police custody are admissible at trial only if the defendant was informed of, and waived, certain rights).

## I.     Procedural History

On April 14, 2005, Petitioner was charged by information with aggravated battery on a pregnant person in violation of Florida Statute § 784.045(1)(b) (count one) and with misdemeanor criminal mischief in violation of Florida Statute § 806.13(1)(b) (count two) (App. A).[3]  Petitioner pleaded guilty to count two (App. D at 20).  After a jury trial on count one, Petitioner was found guilty and sentenced to fifteen years imprisonment (App. B, D).  The Fifth District Court of Appeal *per curiam* affirmed Petitioner's conviction and sentence (App. F); *Stinson v. State*, 949 So. 2d 1045 (Fla. 5th DCA 2007).

Petitioner filed a motion to correct an illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a) (App. G).  The motion was denied by the trial court. *Id.*  Petitioner filed a second Rule 3.8000(a) which was also denied (App. H).  Petitioner appealed the denial, but the appeal was rejected as untimely (App. I).

Petitioner filed a state habeas corpus petition in Florida's Fifth District Court of Appeal (App. J).  The petition was denied (App. J).  Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, followed by several supplements to the motion  ("Rule 3.850 motion") (App. K).  The motion  was denied by the trial court(App. L).  On November 23, 2010, the denial of Petitioner's  Rule 3.850 motion was affirmed without opinion (App. G); *Stinson v. State*, 49 So.3d 765 (Fla. 5th DCA 2010).

The instant petition was timely filed in this Court on March 25, 2011 (Doc. 1).

---

[3] Unless otherwise noted, citations to the record refer to the appendices filed by Respondents on September 19, 2011 (Doc. 12).

## II.   Governing Legal Principles

Pursuant to the Antiterrorism Effective Death Penalty Act ("AEDPA"), federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Brown v. Patton*, 544 U.S. 133, 141 (2005); *Price v. Vincent*, 538 U.S. 634, 638-39 (2003).   A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  *Ferguson v. Calliper*, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006)(citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).   A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.  *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown*, 544 U.S. at 134; *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). The unreasonable application inquiry "requires the state court decision to be more than incorrect or erroneous," rather, it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-77 (2003) (citation omitted); *Mitchell*, 540 U.S. at 17-18; *Ward*, 592 F.3d at 1155.

### A.    Standard for Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and fell below an objective standard of reasonableness; and (2) whether the deficient performance prejudiced the defense. 466 U.S. 668, 687-88 (1984). Therefore, a habeas court's review of a claim under the *Strickland* standard is "doubly deferential." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayanz*, 556 U.S. 111, 113 (2009) (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003))). Because both parts of the *Strickland* test must be satisfied in order to demonstrate a violation of the Sixth Amendment, a district court need not address

the performance prong if the petitioner cannot meet the prejudice prong, or vice versa. *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000).

The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89.   A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  It is the petitioner who bears the burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable."  *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir.  2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny.  *Id*.  "To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden of demonstrating prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.  That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* At 694. A

reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The test used to evaluate claims of ineffective assistance of trial counsel applies equally to an analysis of claims of ineffective assistance of appellate counsel. *Jackson v. Dugger*, 931 F.2d 712, 715 (11th Cir.1991).

### B.     Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> > (A)   the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)
> > > (i)   there is an absence of available State corrective process; or
> > >
> > > (ii)   circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).  Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. " *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Conner*, 404 U.S. 270, 275-76 (1971)).  The petitioner must

apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998).

In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman*, 501 U.S. at 750. If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994).

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish cause for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892.

The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Murray v. Carrier*, 477 U.S. 478, 479-480 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523

U.S. 614, 623 (1998).  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

III.   **Analysis**

   *a.      Claim One*

Petitioner argues that the trial court erred by denying his motion in limine to exclude, as inadmissible hearsay, arresting officer Dale Kelly's ("Officer Kelly's") testimony that the victim told him that Petitioner hit her and that he knew she was pregnant when he did so (Doc. 1 at 5).  Petitioner raised this issue on direct appeal arguing, in terms of state law only, that the trial court had incorrectly decided that the victim's statement to Officer Kelly was an admissible excited utterance instead of an answer to the officer's query as to what had happened (App. E at 9).

Respondents contend that this claim is not cognizable under § 2254 because it raises an issue of state law only, and it was never presented to the state courts as a federal constitutional claim (Doc. 11 at 9-10).  Indeed, briefing an issue as a matter of state law does not exhaust a federal claim on the same grounds.  *Duncan*, 513 U.S. at 366 ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.").  Even when a petition that actually involves state law issues is "couched in terms of equal protection and due process," this limitation on federal habeas corpus review is of equal force.  *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (quoting

*Willeford v. Estelle*, 538 F.2d 1194, 1196–98 (5th Cir. 1976)).  Petitioner argues that any failure to raise a federal constitutional claim in state court should be excused due to appellate counsel's ineffectiveness.  This Court need not address appellate counsel's ineffectiveness because, even if Petitioner could establish an exception to the procedural default doctrine, he is not entitled to relief because his claim fails on the merits.

Whether the victim's statement to Officer Kelly constituted hearsay, as alleged by Petitioner, or an excited utterance was an evidentiary ruling.  Federal courts possess only limited authority to consider state evidentiary rulings in habeas corpus proceedings. *Burgett v. Texas*, 389 U.S. 109, 113–114 (1967);  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("It is not the province of a federal court to reexamine state-court determinations of state-law questions.").  On habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a).  Therefore, absent a constitutional violation, the Florida Supreme Court is the final arbiter of Florida evidentiary law. *See Mills v. Singletary*, 161 F.3d 1273, 1289 (11th Cir. 1998).  A federal court will, however, inquire into a state court's evidentiary ruling when the ruling deprives a petitioner of fundamental fairness. *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).   In order to establish entitlement to relief under the AEDPA, Petitioner would have to establish that the trial court's decision concerning the admissibility of the officer's testimony violated a "fundamental principle of justice" under the Fourteenth Amendment. *Id.* at 43.  Petitioner fails to make this showing.

The trial court's evidentiary ruling, in this case whether Officer Kelly's testimony was inadmissible hearsay, is governed by Florida law and did not raise a federal constitutional question. Moreover, in light of corroborating evidence from the victim regarding her statement, the trial court's decision to admit the statement did not have a "substantial and injurious effect or influence" on the jury's verdict and did not result in "actual prejudice." *Brecht v. Abrahamson*, 507 U.S. 619, 622-623, 638 (1993) (a petitioner is not entitled to habeas relief unless trial error resulted in actual prejudice). In addition to the testimony from Officer Kelly regarding the victim's statement, the victim also testified at trial that Petitioner knew she was pregnant and, after telling her that she "was going to lose this baby," he struck her in the stomach with a closed fist (App. D at 61-62). She also testified that she immediately told Officer Kelly that Petitioner had hit her and that Petitioner knew she was pregnant when he did so. *Id.* at 64. Officer Kelly's repetition of the victim's statements was harmless. Thus, Petitioner was not denied a fair trial in accordance with the traditional and fundamental standards of due process. Claim one is denied as unexhausted and as lacking merit.

**b.     *Claim Two***

Petitioner alleges that improper statements made by the prosecutor during closing arguments constituted fundamental error (Doc. 1 at 6). Petitioner does not specify the statements to which he objects. However, on direct appeal Petitioner argued that the prosecutor improperly vouched for the veracity of Officer Kelly and other witnesses; used sarcasm in reference to Petitioner's sister; indicated that a pregnant woman's memory may

not be "the best"; and argued facts not in evidence (App. E at 10-13).  After reviewing the record, the Court concludes that the prosecutor's statements were not improper.

### 1.       The Prosecutor Did Not Improperly Vouch for Witnesses

Petitioner's assertion that the prosecutor improperly vouched for the truthfulness of the witness' testimony is based upon a misapprehension of that concept.  Attempts to bolster a witness by vouching for his credibility are improper "if the jury could reasonably believe that the prosecutor indicated a personal belief in the witness' credibility." *United States v. Eyster*, 948 F.2d 1196, 1206 (11th Cir. 1991) (citing *United States v. Sims*, 719 F.2d 375, 377 (11th Cir. 1983)).  However, "[t]he prohibition against vouching does not forbid prosecutors from arguing credibility . . . it forbids arguing credibility based on the reputation of the government office or on evidence not before the jury." *United States v. Hernandez*, 921 F.2d 1569, 1573 (11th Cir. 1991).  When a prosecutor voices a personal opinion but indicates that this belief is based on evidence in the record, the comment is not improper. *United States v. Granville*, 716 F.2d 819, 822 (11th Cir. 1983) (finding no prosecutorial misconduct where prosecutor, in an effort to support testimony of two Government witnesses, only pointed to matters in evidence).

This Court finds no instances of improper bolstering in the prosecution's closing argument.  None of the comments identified by Petitioner in his appellate brief were an explicit personal endorsement of a witness' credibility, nor did any of the comments include a reference to evidence not before the jury.  Referring only to evidence presented at trial, the prosecutor argued that Officer Kelly's testimony was credible because the officer had no reason to fabricate the story and because he was only ten or fifteen feet away from Petitioner

when Petitioner allegedly hit the victim in the stomach (App. D at 210-229).  The prosecutor's

comments were not an explicit personal endorsement of Officer Kelly's credibility and did not

include references to evidence not before the jury.  The prosecutor also noted that:

> Now, from [Petitioner's] testimony, everyone is one big happy family now.
> So the question is, if they're such a big happy family, why would they come
> in and lie?  Because they didn't.

*Id.* at 213.  This statement, while a personal opinion of the witness' testimony, was not a

reference to evidence not before the jury.  Accordingly, Petitioner fails to show that the

prosecutor's comments regarding the veracity of the witnesses were improper.

### 2.  The Prosecutor Did Not Improperly Argue Facts Not in Evidence During the Closing Argument

The prosecutor did not improperly argue facts not in evidence during the closing

argument.   Rather, a review of the record indicates that the challenged remarks were fair

comment on the evidence presented at trial.  *See Davis v. Singletary*, 853 F. Supp. 1492, 1564

(M.D. Fla. 1994) ("[T]he prosecutor's comments regarding the veracity of the State's witnesses,

although enthusiastic, did not cross the bounds of impropriety.").

Petitioner contends that the prosecutor improperly referred to Petitioner's sister as

"loving."  However, on cross-examination of Petitioner's sister, the prosecutor asked whether

she had feelings for, and cared about what happened to her brother, and she indicated that

she did (App. D at 178).  The prosecutor's comment regarding Petitioner's "loving" sister was

not improper.  Rather, it was a fair comment on the evidence and the potential bias of the

witness.

-13-

Petitioner contends that the prosecutor improperly commented that the memory of pregnant women may not be the best without presenting "a shred of evidence concerning the memory capabilities of postpartum women." (App. E at 13). During the defense's closing argument, counsel strenuously argued that the victim's testimony at trial differed from her earlier deposition testimony, insinuating that the discrepancies showed she could not be believed (App. D at 218-222). In rebuttal closing, the prosecutor argued that the inconsistencies in the victim's testimony were minor, and "I want to point out to you that that deposition was given ten days before she gave birth. And to anyone who's had the experience of being pregnant or around women who have been pregnant, their memories sometimes are not the best." *Id.* at 230. The prosecutor's comment regarding a pregnant woman's memory was merely an attempt to explain minor inconsistencies in the victim's testimony. The comment was not improper.

Petitioner contends that the prosecutor improperly stated that Petitioner was living off of the victim's mother (App. E at 13). Petitioner testified that he was not working at the time of the incident, but that the victim's mother was working full time and paying all the bills (App. D at 193-194). Accordingly, the prosecutor's comment that Petitioner was "living off" the victim's mother was not improper. Rather, it was a fair comment on the evidence.

Petitioner contends that the prosecutor's comment that he hit the victim "to get revenge because Kim had called the cops on him" was improper (App. E at 13). Petitioner argues that there was no evidence that he retaliated against the victim because she had called the police. *Id.* at 13. Evidence presented at trial reflected that the victim argued with Petitioner over his

treatment of her mother; that the victim called the police; and that Petitioner was asked to leave the home (App. D at 58-62, 90-92, 111-114, 193-194).   Officer Kelly testified that Petitioner told him that he had "one more thing to do" as he walked inside, made contact with the victim, and appeared to swing at her with his right arm. *Id.* at 115.   The victim testified that, immediately prior to striking her in the stomach, Petitioner told her that she was going to "lose this baby." *Id.* at 61.   In light of this testimony, the prosecution made a proper argument that Petitioner struck the victim in retaliation for Kim calling the police.

Even assuming, *arguendo*, that any of the  prosecutor's remarks were improper, the Court cannot find that the remarks had a prejudicial affect on the substantial rights of Petitioner such that the trial was rendered fundamentally unfair. Any  "prejudicial remark may be rendered harmless by curative instructions to the jury." *United States v. Simon*, 964 F.2d 1082, 1087 (11th Cir. 1992) (quoting *United States v. Weinstein*, 762 F.2d 1522, 1542 (11th Cir. 1985)).   Such a curative instruction "purges the taint of a prejudicial remark because 'a jury is presumed to follow jury instructions.' " *Simon*, 964 F.2d at 1087 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1447 (11th Cir. 1983)).   Prior to closing argument, the trial court instructed the jury that "the attorneys will now present their final arguments.   Please remember that what the attorneys say, either oral or written, is not evidence." (App. D at 204). During its charge to the jury, the trial court stated: "It is to the evidence introduced upon this trial and to it alone that you are to look for that proof. A reasonable doubt as to the guilt of the defendant may arise from the evidence, a conflict in the evidence, or the lack of evidence." *Id.* at 235.   Given these instructions, which Petitioner does not contend are inaccurate, no

prejudice resulted from the isolated passages Petitioner highlighted upon direct appeal. The trial court carefully instructed the jury that the attorneys' arguments were not evidence, but were simply intended to aid the jurors in their understanding of the case. *Id.* at 204.

Because the state court's rejection of Claim Two was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, relief is denied pursuant to 28 U.S.C. § 2254(d).

### c.    Claim Three

Petitioner alleges that appellate counsel was ineffective for failing to raise on direct appeal that the jury instruction for aggravated battery used at his trial was missing an element (Doc. 1 at 8). Petitioner argued in his state habeas petition that although the trial court read the Florida standard instruction to the jury, the instruction did not specifically require the jury to determine whether the victim was actually pregnant at the time of the battery, and "the instructions given had the effect of directing a verdict against [Petitioner] on [that] element (i.e. whether the victim was pregnant)." (App. 4).[4] Petitioner's state habeas petition was denied by Florida's Fifth District Court of Appeal (App. J).

---

[4] Florida Statute § 784.045(2)(b) reads:

> A person commits aggravated battery *if the person who was the victim of the battery was pregnant at the time of the offense* and the offender knew or should have known that the victim was pregnant.

(2005) (emphasis added).

-16-

In its charge to the jury, the trial court instructed the jury that the prosecution needed

to prove: (1) that Petitioner' "intentionally touched or struck [the victim] against her will; and

(2) in committing battery, Petitioner "knew or should have known" that the victim was

pregnant (App. D at 233). Trial counsel did not object to the instruction as read. *Id.* at 147, 233.

Absent an objection at trial, an unpreserved error may be reviewed on appeal only if it rises

to the level of fundamental error. *See Reed v. State*, 837 So.2d 366, 370 (Fla. 2002). In defining

the scope of the fundamental error doctrine, the Florida Supreme Court has explained that a

fundamental error is one that "goes to the foundation of the case or goes to the merits of the

cause of action." *Sanford v. Rubin*, 237 So.2d 134, 137 (Fla. 1970). "To justify not imposing the

contemporaneous objection rule, 'the error must reach down into the validity of the trial itself

to the extent that a verdict of guilty could not have been obtained without the assistance of

the alleged error.' " *State v. Delva*, 575 So.2d 643, 644–45 (Fla. 1991) (quoting *Brown v. State*, 124

So.2d 481, 484 (Fla. 1960)).

In the context of jury instructions, "'fundamental error occurs only when the omission

is pertinent or material to what the jury must consider in order to convict.'" *Delva*, 575 So.2d

at 645 (quoting *Stewart v. State*, 420 So.2d 862, 863 (Fla.1982)). It follows that a failure to

instruct the jury on an element of a crime is fundamental only when that particular element

is disputed at trial. *Reed*, 837 So.2d at 369. Where an element of the crime is not accurately

defined but is undisputed at trial, "the error is not fundamental error." *Id.* Because the

victim's pregnancy was not disputed at trial, the trial court's failure to include an "actually

pregnant" instruction to the jury falls squarely within the type of non-fundamental omission contemplated by the Florida Supreme Court in *Reed.*

Petitioner did not contest the missing element of "whether the victim was pregnant." Rather, defense counsel strenuously argued at trial that there was no evidence that Petitioner had committed battery on the victim (App. D at 55, 140, 199, 214-222).  At no time did defense counsel allege, or even allude, that the victim was not pregnant on March 26, 2005, the night of the incident.  Despite testimony from the victim, the victim's mother, and Petitioner's sister that the victim was pregnant at the time of the incident, the defense did not question or contest the existence of the pregnancy. *Id.* at 57, 62, 65, 73, 93.  Indeed, the victim testified that her baby was born on June 17, 2005, less than three months after the incident. *Id.* at 65.  The birth date was not contested by the defense.  Because the missing element was not contested at trial, any error in its omission from the jury instruction could not be fundamental error.

Since any error in the instructions was not fundamental, the jury instruction issue would have been unsuccessful if raised on appeal, and appellate counsel's performance did not affect the outcome of the appeal. Consequently, appellate counsel did not render constitutionally ineffective assistance, and Claim Three is denied pursuant to 28 U.S.C. § 2254(d).  *See Card v. Dugger*, 911 F.2d 1494, 1520 (11th Cir. 1990) (holding that appellate counsel is not required to raise meritless issues).

> **d.    Claim Four** [5]

---

[5] Respondent argues that claims four through twelve have been procedurally defaulted because Petitioner did not pursue an appeal from the trial court's order denying his Rule 3.850 motion (Doc. 11 at 11). This Court cannot agree. Petitioner moved for, and was granted, a belated appeal on the denial which was *per curiam* affirmed on November 23, 2010 (App. M).  Accordingly, these claims are addressed on the merits.

Petitioner alleges that trial counsel was ineffective for failing to object to a leading question to the victim regarding her pregnancy (Doc. 1 at 9). Specifically, Petitioner takes issue with a question from the prosecutor regarding whether the victim had been drinking the day of the incident (App. D at 57). The victim responded, "No. I was pregnant." *Id.* Petitioner raised this issue in ground one of his Rule 3.850 motion, and the trial court determined that the trial record conclusively showed that no improper leading question had been asked of the victim (App. L at 2-3). The trial court also determined that Petitioner could not show prejudice from the exchange because the victim was obviously pregnant at the time of the incident since she had given birth three months afterwards. *Id.* at 3.

It is unnecessary for this Court to consider whether counsel was ineffective for failing to object to the victim's non-responsive answer to the prosecutor's question because Petitioner can show no prejudice from the exchange. In fact, Petitioner does not even allege that the non-responsive answer caused him prejudice. As noted above, the victim's pregnancy was not disputed at trial. Accordingly, the victim's testimony regarding her pregnancy could not have been prejudicial. Claim Four fails under the second prong of *Strickland*, and is denied pursuant to 28 U.S.C. § 2254(d).

e.     **Claim Five**

Petitioner alleges that trial counsel was ineffective for failing to object to the prosecution's elicitation of hearsay testimony from the victim's mother regarding whether the victim told her that Petitioner had harmed her (Doc. 1 at 10). Petitioner raised this claim in his Rule 3.850 motion for post-conviction relief. The trial court denied the claim, noting that

defense counsel had opened the door to the prosecutor's question by asking the victim whether she had told her mother that Petitioner did not hit her, and that the state "was entitled to clear up any misleading impressions of a recent change in testimony that may have been created by the defense attorney's question." (App. L at 3).

Under Florida law, when a party "opens the door" to misleading testimony, or has made specific factual assertions, the opposing party has the right to correct that information in order that the jury not be misled. *Bozeman v. State*, 698 So.2d 629, 630 (Fla. 4th DCA 1997). Here, counsel created an issue as to whether the victim had told her mother that Petitioner had not hit her:

> [Counsel].   At any point in time, have you told your mother that it didn't happen?
>
> A.   No
>
> Q.   You did not tell her that you were –
>
> A.   No.
>
> Q.   -- never punched?
>
> A.   No.

(App. D at 74-75).  Afterwards, the prosecutor asked the victim's mother:

> [State].   Now, did Kim ever tell you that – from – March the 26th until today, did Kim ever tell you that this didn't happen?
>
> A.   She said that he had hit her.
>
> Q.   And has she consistently told you that, yes, he hit her?
>
> A.   Yes.  She said he hit her.

(App. D at 97).   The prosecution's questions were in direct response to those of the defense.

Accordingly, defense counsel had no valid grounds to object to the questions.   Counsel is not

ineffective for failing to make a meritless objection. *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th

Cir. 2002) (counsel not ineffective for failing to raise issues clearly lacking in merit).   This

claim fails under the performance prong of *Strickland* and is denied pursuant to 28 U.S.C. §

2254(d).

> ### f.   *Claim Six*

Petitioner alleges that trial counsel was ineffective for failing to object to the video

deposition testimony of Officer Kelly (Doc. 1 at 15).[6]   Petitioner alleges that Officer Kelly

testified to a spontaneous statement made by Petitioner without *Miranda* warnings. *Id.*

Specifically, Petitioner takes issue with a portion of Officer Kelly's testimony in which Officer

Kelly described his actions in response to the altercation that led to Petitioner's arrest:

> [State]:   What did you decide to do after you approached [Petitioner] very
> quickly?
>
> A.   I immediately placed him in handcuffs and placed him in the
> back of my car.
>
> Q.   Did he make any statements to you about – at that time before he
> got into the car?
>
> A.   He – he said he didn't do nothing wrong.  I placed him in back of
> my car.
>
> I told him, I says, "You did it in front of a law enforcement
> officer."

---

[6] Officer Kelly could not testify in person because he was serving in Iraq at the time of Petitioner's
trial (App. D at 5).

And he said, "Well, I didn't do nothing wrong." And he was yelling back and forth.

And then he said that – that she has done this before, and she would not go through with the charges.

Q.      Well. what did you tell him in response to that statement?

A.      I told him, I said, it didn't matter, that the act was done in front of a law enforcement officer.

(App. D at 118-119).   Petitioner raised this issue in his Rule 3.850 motion for post-conviction relief, and the trial court denied the claim on the grounds that any objection by counsel would not have been sustained because "*Miranda* warnings are not required where, as here, no interrogation takes place[.]" (App.  L at 3). The trial court's determination that Petitioner's statements were not made in response to interrogation was neither contrary to clearly established federal law nor based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Before a defendant in custody can be interrogated, he must be informed: (1) of his right to remain silent; (2) that statements can and will be used against him in a court of law; (3) that he has the right to an attorney during questioning; and (4) that if he cannot afford an attorney, one will be appointed. *Miranda*, 384 U.S. at 478-479.  It is clear from Officer Kelly's testimony that Petitioner was "in custody" at the time of his statements.  However, *Miranda* does not apply to Petitioner's statement because there was no interrogation.

While the Fifth Amendment prohibits an officer from interrogating an arrestee without reading that arrestee his *Miranda* rights, the rule extends only to the functional equivalent of an interrogation. *United States v. McKenzie*, 132 Fed. Appx. 788, 789-790 (11th Cir.2005) ( citing

-22-

*Rhode Island v. Innis*, 446 U.S. 291, 299 (1980)).[7]   Voluntary statements, even those made without a *Miranda* warning, are admissible as long as they are given freely and voluntarily without compelling influences. *Id.* at 299-300.   Petitioner's statements to Officer Kelly were voluntary.   In fact, in the instant petition, Petitioner characterizes the statements as "spontaneous." (Doc. 1 at 15).   Because counsel had no grounds to object to Officer Kelly's testimony, he was not ineffective for failing to do so.   This claim is denied pursuant to 28 U.S.C. § 2254(d).

g.    **Claims Seven and Ten**

Petitioner alleges that trial counsel was ineffective for failing to object to comments made by the prosecutor in her closing argument (Claim Seven) (Doc. 1 at 15).   Specifically, Petitioner asserts that counsel should have objected to a comment by the prosecutor that Petitioner was "living off" of the victim's hard working mother and that he punched the pregnant victim in the stomach in retaliation for her having called the police to protect her mother from the Petitioner.   Petitioner also alleges that trial counsel was ineffective for failing to object to the prosecutor's comment that "sometimes pregnant women don't have the best memories." (Claim Ten). *Id.*   Petitioner raised these claims in his Rule 3.850 motion for post-conviction relief, and the trial court denied the claims on the grounds that there were no bases for counsel to object to the prosecutor's closing argument (App. L at 4, 5).   As discussed in claim two, *supra*, the prosecutor's comments were not improper.   Accordingly, trial counsel

---

[7] This is an unpublished decision and is persuasive, but not binding, authority pursuant to Eleventh Circuit Rule 36–2. The Court notes this same rule applies to other Fed. Appx. cases cited herein.

was not ineffective for failing to object. These claims fail under the performance prong of *Strickland* and are denied pursuant to 28 U.S.C. § 2254(d).

### h.     Claim Eight

Petitioner alleges that trial counsel was ineffective for failing to object to the prosecutor's question to Petitioner's sister regarding whether she knew the victim was pregnant. Petitioner alleges that the question, asked on cross examination, was outside the scope of direct examination (Doc. 1 at 15). Petitioner raised this issue in his Rule 3.850 motion for post-conviction relief, and the trial court, while conceding that the question was outside the scope of direct, denied the claim because Petitioner could not show prejudice from the question (App. L at 4).

In response to a question from the prosecution, Petitioner's sister acknowledged that she knew the victim was pregnant at the time of the incident. However, she also testified that she did not know who else knew about the pregnancy and that she only knew of it because she was friends with the victim's mother (App. D at 178). She did not testify that she told Petitioner of the pregnancy or that she learned of it from him. Her knowledge of the victim's pregnancy was irrelevant. The trial court's determination that Petitioner could not show prejudice from his sister's testimony was not an unreasonable application of *Strickland* nor an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This claim is denied pursuant to 28 U.S.C. § 2254(d).

### i.     Claim Nine

Petitioner alleges that trial counsel was ineffective for failing to object to the prosecutor's reference to "lamps or lighting" in her closing argument because no evidence of such was presented at trial (Doc. 1 at 15).  Petitioner raised this issue in his Rule 3.850 motion for post-conviction relief, and the trial court denied the claim on the basis that the trial transcript conclusively refuted the claim (App. L at 5).  Indeed, a review of the transcript indicates that the victim was questioned about the lighting in the room where the incident occurred and that she testified that all the lights and the "lamp by the door" were lit (App. D at 63,  86).  On cross-examination, defense counsel pointed out that, in her deposition, the victim had testified that the light wasn't bright. *Id.* at 86.  Because Petitioner's claim is clearly refuted by the record, the state court's adjudication of this claim was not "based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" and is denied pursuant to 28 U.S.C. § 2254(d).

### j.      Claim Eleven

Petitioner alleges that trial counsel was ineffective for failing to object to the prosecutor's rebuttal closing argument that the victim's refusal of ambulance transportation to the hospital did not mean she was not battered and to the prosecutor's observation that ambulance bills are expensive.  Petitioner argues that the comments were improper because the victim did not testify that she refused the ambulance because of the expense (Doc. 1 at 15). Petitioner raised this claim in his Rule 3.850 motion for post-conviction relief, and the trial court denied the claim on the ground that the prosecution was entitled to respond to defense counsel's argument that the victim must have refused the ambulance because she was not

battered.   The trial court also determined that Petitioner could not show prejudice from counsel's failure to object because his argument that the jury would have reached a different verdict based on the victim's alleged failure to obtain treatment was purely speculative (App. L at 6).

Under Florida law, a prosecutor's comments are not improper where they fall into the category of an "invited response" by the preceding argument of defense counsel concerning the same subject. *See Sorey v. State*, 463 So.2d 1225 (Fla. 3d DCA 1985) (rejecting ineffective assistance claim for failure to object to prosecutor's closing argument which constituted a fair response to defense counsel's comments).   During closing argument, defense counsel argued that "nothing happened because a pregnant woman who gets hit in the stomach as hard as she said she got hit is going to want medical attention right away and she denied it." (App. D at 223).   On closing rebuttal, the prosecutor argued that "[a]s far as the medical attention that was offered to her at the time, she said that she didn't want – anybody who's ever had to pay an EVAC bill certainly doesn't want to go in an ambulance. She didn't want to go in an ambulance and, in fact, went later in the evening." *Id*. at 231.   The prosecutor's comments were an invited response to defense counsel's argument that the victim had not sought medical treatment.   Accordingly, counsel had no grounds to object to the prosecutor's statements.

Moreover, Petitioner has presented no evidence, or even argument, that the jury would have reached a different verdict had counsel objected to the prosecutor's speculative comment.   The victim testified that she sought medical attention at the hospital the night of

the incident and from her private doctor the following day (App. D at 73-74). Her reasons for refusing to ride to the hospital in an ambulance were irrelevant. The state court's determinations that the prosecutor's comments were a fair response to defense counsel's closing argument and that Petitioner could not demonstrate prejudice from the comments, were neither based upon an unreasonable application of *Strickland* nor "based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." This claim is denied pursuant to 28 U.S.C. § 2254(d).

### k.    *Claim Twelve*

Petitioner argues that counsel was ineffective for failing to obtain the victim's medical records to verify that she was actually pregnant at the time of the incident and to verify that she actually sought medical treatment after the incident (Doc. 1 at 16). Petitioner raised this issue in his Rule 3.850 motion for post-conviction relief, and the trial court denied the claim. The trial court noted that the victim had given birth three months after the battery, so her pregnancy at the time of the battery was obvious. The court also noted that Petitioner could show no prejudice from counsel's failure to produce her records on this issue (App. L at 6). The trial court determined that counsel's failure to seek medical records of the victim's treatment after the battery was strategic because defense counsel had argued that the state's failure to produce the records was a weakness in its case. *Id.* at 6-7.

As pointed out by the trial court, counsel did not ignore the absence of medical records at the trial. Instead, during closing argument, counsel argued that there was nothing to corroborate the victim's testimony that she had gone to the doctor after the battery (App. D

at 222).  This is within the realm of reasonable trial strategy.  *See Hutchinson v. Bell*, 303 F. 3d

720, 249 (6th Cir. 2002) (counsel's decisions regarding the evidence to present are presumed

to be matters of trial strategy).  To the extent that counsel's decision to forego seeking the

victim's medical records was a strategic decision, it is virtually unassailable.  *See Strickland*,

466 U.S. at 690 ("Strategic choices made after a thorough investigation are virtually

unassailable.").

Regardless of whether counsel's failure to seek the victim's medical records was a

strategic decision, Petitioner's allegation of prejudice is mere speculation.  He presents no

affidavits or other proof to show that the victim was not pregnant or did not seek medical

treatment after the battery.  He merely speculates that the records could have changed the

outcome of his trial.  Such a claim is too tenuous to support a claim of ineffective assistance

of counsel.  The Eleventh Circuit has held that "'[s]peculation is insufficient to carry the

burden of a habeas corpus petitioner as to what evidence could have been revealed by further

investigation.' " *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985).

Equally unavailing is Petitioner's argument, raised for the first time in his

supplemental replies, that the state committed a *Brady* violation by failing to offer evidence

that the victim was pregnant at the time of the battery and that she suffered great bodily

harm as a result of the battery.  Petitioner has not articulated a legally sufficient claim.  Under

*Brady v. Maryland*, the failure of a prosecutor to disclose evidence favorable to a defendant

upon request violates due process where the evidence is material to either guilt or

punishment.  373 U.S. 83, 87 (1963).  Petitioner has not pointed to any evidence that *Brady*

-28-

material existed and was not turned over.[8] As a result, Petitioner has no basis to contend that counsel's performance was deficient or that he was prejudiced by counsel's alleged failure to request *Brady* material. *See Ammatullo v. Taylor*, 2005 WL 2386093 (S.D.N.Y., Sept. 25, 2005) ("without any showing that [*Brady*] evidence existed, [Petitioner] has no basis to claim that the government was responsible for withholding it.").

The trial court's adjudication of this claim was not contrary to *Strickland*, nor was it based on an unreasonable determination of the facts presented in the state court proceeding. Accordingly, claim twelve is denied pursuant to 28 U.S.C. § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.   <u>Certificate of Appealability</u>

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).   To make such a showing, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Secretary Department of Corrections*, 568 F.3d 929, 934 (11th Cir. 2009).  When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of

---

[8]Petitioner appears to argue, without support, that the state should have developed favorable evidence, and the state's failure to do so constituted a *Brady* violation.

a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*; *Lamarca*, 568 F.3d at 934.   However, a prisoner need not show that the appeal will succeed.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, the Court will deny Petitioner a certificate of appealability.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.      The Petition for Writ of Habeas Corpus filed by Allen Duane Stinson is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.  The Clerk of the Court shall enter judgment accordingly.

2.      Petitioner is **DENIED** a Certificate of Appealability.

3.      The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** at Orlando, Florida, this 30th day of January, 2013.

Charlene Edwards Honeywell
United States District Judge

Copies to:
OrlP-4 1/30
Allen Duane Stinson

-30-